# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE FIRSTENERGY CORP. SECURITIES LITIGATION,<br><br>This document relates to:<br><br>    ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ<br><br>District Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |
| MFS SERIES TRUST I, ET AL.,<br><br>    PLAINTIFFS,<br><br>V.<br><br>FIRSTENERGY CORP., ET AL.,<br><br>    DEFENDANTS. | Case No. 2:21-cv-05839-ALM-KAJ<br><br>District Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |
| BRIGHTHOUSE FUNDS TRUST II – MFS VALUE PORTFOLIO, ET AL.,<br><br>    PLAINTIFFS,<br><br>V.<br><br>FIRSTENERGY CORP., ET AL.,<br><br>    DEFENDANTS. | Case No. 2:22-cv-00865-ALM-KAJ<br><br>District Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

## OPINION & ORDER

Defendants Charles Jones and Michael Dowling's and FirstEnergy Corp.'s objections to the Special Master's April 15, 2025, Order and Report and Recommendation are before the Court. (Doc. 784; Docs. 794, 797). For the following reasons, their objections to the Special Master's Report and Recommendation modifying the stipulated protective order are not well taken and are

**OVERRULED**. The Court **ADOPTS** the Special Master's recommended language in full. The parties are **ORDERED** to file a clean, signed version of the second amended protective order within seven (7) days.

I.     **BACKGROUND**

Elsewhere, the Court summarized the allegations underlying this action. (*See* Docs. 175, 219, 461). In brief, Plaintiffs assert that First Energy Corp. ("FirstEnergy) and "its most senior executives bankrolled one of the largest corruption and bribery schemes in U.S. history," and once FirstEnergy's role was revealed, "the price of FirstEnergy stock plummeted." (Doc. 72 at ¶¶ 3, 9). Also necessary to understand this Order, an Ohio grand jury indicted former FirstEnergy executives Charles Jones and Michael Dowling for conspiracy, bribery, engaging in a pattern of corrupt activity, money laundering, and telecommunications fraud. (*See* Doc. 804-2 at 57–106, 108–143). Their related criminal case remains pending in Summit County, Ohio, *State of Ohio v. Michael Dowling and Charles E. Jones*, Case No. CR-2024-02-473 B & C.

At issue now is Defendants Jones and Dowling's Motion for a Second Amended Protective Order. (Doc. 719; *see also* Docs. 720, 723, 725, 729). In it, Jones and Dowling argue good cause supports modifying the operative protective order for various reasons related to their pending criminal case and an SEC enforcement action, in which Jones is a defendant. (*See generally* Doc. 719; *see also* Doc. 411 (Amended Stipulated Protective Order)). Discussed in more detail below, Special Master Shawn K. Judge recommended modifying the protective order, but he did not recommend every change the two wanted. (Doc. 784 at 8–13). Jones and Dowling and FirstEnergy objected to the Special Master's recommendation. (Docs. 794, 797).

Defendants requested oral argument on their objections, contending it would aid the Court's consideration of these matters given their complex nature and "public importance." (Doc. 795; Doc.

2

797 at 1); *see* Local Rule 7.1(b)(2). The Court disagrees and finds the briefing sufficient.

## II. STANDARD

Rule 53 of the Federal Rules of Civil Procedure provides that a reviewing court must consider *de novo* all objections to findings of fact and conclusions of law made or recommended by a special master and may set aside a "ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(3)–(5). The Court's Order of Appointment adopts Rule 53's standard of review language in full. (Doc. 541 at 6–7). Because it is a procedural matter, the Court reviews the Special Master's recommended modifications to the protective order for abuse of discretion. *Cf. Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (reviewing the grant of a protective order for abuse of discretion).

## III. DISCUSSION

The parties stipulated to the operative protective order over two years ago. (Doc. 411). Even so, courts have the inherent power to modify a protective order. *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 118 (6th Cir. 1981). The moving party bears the burden of showing good cause supports the alteration. *See, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-00849, 2020 WL 5417560, at *2 (S.D. Ohio Sept. 10, 2020); *Info-Hold, Inc. v. Muzak Holdings LLC*, No. 1:11-CV-283, 2012 WL 3061024, at *3 (S.D. Ohio July 26, 2012). Here, Defendants Jones and Dowling's motion to modify the protective order required the Special Master to consider many moving parts.

To begin, paragraphs 4 and 11 of the operative protective order read:

> 4. Designating Material
> (a) Designating Material As Confidential: Any party, or any third party subpoenaed by one of the parties, may designate as Confidential and subject to this Protective Order any documents, testimony, written responses, or other materials produced in these Actions if they contain information that the Producing Entity asserts in good faith is protected from disclosure by statute or common law,

3

>including, but not limited to, confidential personal information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available. Information that is publicly available may not be designated as Confidential. The designation of materials as Confidential pursuant to the terms of this Protective Order does not mean that the document or other material has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.
>
>(b) Designating Material As Attorneys' Eyes Only. Any party, or any third party subpoenaed by one of the parties, may designate as Attorneys' Eyes Only and subject to this Protective Order any materials or information that meet the test set forth in Paragraph 4.a, but as to which the Producing Entity also asserts in good faith that the information is so competitively sensitive that the receipt of the information by parties to these Actions could result in competitive harm to the Producing Entity.
>
>\*\*\*
>
>11. No Voluntary Disclosure to Other Entities. The parties or anyone acting on their behalf may not voluntarily disclose any Confidential Information to any state or federal law enforcement or regulatory agency, or any employee thereof, except in these Actions as set forth in Paragraph 6 of this Order or as otherwise commanded by law or provided in this Order. Nothing in this Order shall prevent a party from providing information in its possession in response to a valid order or subpoena from a law enforcement or regulatory agency requiring the production of such information, except that, prior to such production, the party producing the information shall provide as much advance notice as possible to the person or entity that designated the material as confidential to facilitate that party's efforts to preserve the confidentiality of the material, if warranted.

(Doc. 411 at 3, 14).

As the Special Master succinctly summarized, Jones and Dowling's motion requesting to modify these paragraphs asserts that: "(1) information is being designated as Confidential Information under the terms of the operative protective order, (2) the information is then also disclosed to prosecuting attorneys or regulatory agencies as permitted under the protective order, (3) the Confidential Information is then disclosed publicly via public records requests or otherwise, and (4) such disclosure [] risks prejudicing their rights to a fair criminal trial or fair trial in other proceedings." (Doc. 784 at 8). Jones and Dowling argued good cause supports changes to mitigate those risks, and they proposed language to that end. (Doc. 719; *see also* Doc. 794 at 32). Defendant

FirstEnergy, Plaintiffs, and Intervenor the State of Ohio all opposed Jones and Dowling's proposal for various reasons, and some of them offered their own ideas. (Docs. 720, 723, 725).

While the Special Master declined to recommend modifications to paragraph 4, he found good cause supports the following amendments to paragraph 11:

> 11. No Voluntary Disclosure to Other Entities. The parties or anyone acting on their behalf may not voluntarily disclose any Confidential Information to any state or federal law enforcement or regulatory agency, or any employee thereof, except in these Actions as set forth in Paragraph 6 of this Order or as otherwise commanded by law or provided in this Order. Nothing in this Order shall prevent a party from providing information in its possession in response to a valid order or subpoena from a law enforcement or regulatory agency requiring the production of such information provided the following three conditions are met.
>
> First, prior to such disclosure or production, the party producing the information shall provide as much advance notice as possible to the person or entity that designated the material as Confidential Information to facilitate that party's efforts to preserve the confidentiality or non-production of the material, if warranted.
>
> Second, disclosure or production to an agency is permitted only if the agency submits a written agreement to the Court indicating that the agency will not disclose the Confidential Information during the pendency of this federal litigation, even in response to a public records request, and that the agency submits to the jurisdiction of the Court for purposes of enforcement.
>
> Third, if the agency involved is the Ohio Attorney General's Office and the office of the Summit County Prosecuting Attorney, the two state agencies (that represent the State of Ohio in pending state criminal matters) must agree that they are separately bound by the terms of the April 24, 2024 Protective Order issued by the Summit County Court of Common Pleas. The Ohio Attorney General's Office and the office of the Summit County Prosecuting Attorney further agree that that they shall give any material from this case bearing a "Confidential Information" designation a reciprocal "Confidential Discovery" designation under the terms of the state court's April 24, 2024 Protective Order, and handle such material accordingly. Nothing in this court's order shall be construed to limit, constrain or prevent the State of Ohio or the courts of the State of Ohio from using or entering as evidence any material bearing a "Confidential Information" designation in any state criminal proceeding. Further, nothing in this order shall be construed to limit, constrain or prevent defendants Jones and Dowling from complying with their Oh. Crim. R. 16(H) reciprocal discovery obligations in the state criminal case.

(Doc. 784 at 12–13).

Defendants Jones and Dowling and Defendant FirstEnergy objected to the Special Master's recommendation. (Docs. 794, 797). Ironically, Jones and Dowling contend the Special Master abused his discretion by not going far enough to protect some interests (Doc. 794 at 31), whereas FirstEnergy thinks the Special Master went too far in protecting others. (Doc. 797 at 6). Ultimately, however, the Court finds all their objections lacking.

1. *Jones and Dowling's Objections*

Essentially, Jones and Dowling object to the Special Master's recommendation because he did not adopt every modification they wanted. As summarized in their objection, Jones and Dowling proposed two general modifications to the protective order that, in tandem, "address their concerns about the risk of jury-pool taint that has arisen as a result of the media pipeline in this case." (Doc. 794 at 32; *see also* Doc. 719 at 8–12; Doc. 719-1 at 4–5, 17). Of note, if the Court adopted their proposal, the definition of "Confidential Information" under the protective order would expand substantially to include:

> (a) any Confidential discovery material produced in the Summit County criminal case; (b) deposition testimony taken in or produced into the case that any party has a good faith belief will undermine a party's ability to obtain a fair trial in a related criminal proceeding (including the Summit County criminal case); and (c) any material created by or received from the SEC or a law enforcement agency, including but not limited to the Ohio Organized Crime Investigations Commission.

(Doc. 719 at 10–11; Doc. 794 at 37) ("Paragraph 4 Modification").

In considering Jones and Dowling's Motion, the Special Master noted that it was "a close call whether Jones and Dowling have presented good cause to modify the existing protective order." (Doc. 784 at 9). He highlighted that their "contention of prejudice via the release of information to the public—the ability to have a fair trial—is in part conclusory as opposed to presenting specific facts that demonstrate or prove the likelihood of their being harmed." (*Id.*). Still, he concluded that "prudence and pragmatism lean in favor of modifying the protective order before a leak or

disclosures occurs that cannot be unrung and that will harm Jones and Dowling's rights to a fair trial or the State of Ohio's right to a fair state-court prosecution." (*Id.*; *see also id.* at 12 (citing Ohio law and noting "it appears that Jones and Dowling are correct when they assert that Ohio law exempts from disclosure (at least during the pendency of a trial) records that, if released, would prejudice a criminal defendant's right to a fair trial")). But the Special Master ultimately rejected the exact changes Jones and Dowling endorsed, opting in favor of "a combination of propos[ed] elements" suggested by the parties. (*Id.* at 12). His recommendation excluded Jones and Dowling's Paragraph 4 Modification.

According to Jones and Dowling, the Special Master abused his discretion by failing either to discuss the Paragraph 4 Modification or to analyze "whether [the modification] is appropriate to protect Mr. Jones and Mr. Dowling from significant prejudice." (Doc. 794 at 31–32, 35). This failure, they argue, "places [the Special Master's] decision 'outside [the] broad range of permissible choices' that define his discretion." (*Id.* at 32 (quoting *Liberty Ford Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 1:21-CV-02085, 2024 WL 1430667, at *2 (N.D. Ohio Apr. 3, 2024)). Yet, it's unclear why the Special Master's failure to opine at length about the Paragraph 4 Modification places his recommendation outside the broad range of permissible choices allowed under his discretion. Unhelpfully, Jones and Dowling provide no caselaw or support that brevity—something all parties to this case would do well to practice—equates to an abuse of discretion. Their objection, rather, relitigates the exact arguments they presented to the Special Master.

Regardless, the Court finds Jones and Dowling's contention that the Special Master abused his discretion meritless. The Special Master did not wholly ignore Jones and Dowling's Paragraph 4 Modification or associated concerns. To the contrary, he expressly acknowledged their proposal "to expand the definition of Confidential Information" and discussed their fair trial rights. (Doc. 784

7

at 11). Additionally, the Court cannot overlook the particulars of the Paragraph 4 Modification, which would allow Jones and Dowling to protect *any* confidential discovery material produced in the Summit County criminal case; *any* deposition testimony that they believe will undermine their fair trial rights; and *any* material created by or received from the SEC or a law enforcement agency. (Doc. 794 at 37). Nothing in Jones and Dowling's objection convinces the Court that good cause supports such expansive language or that the parties should be granted such unilateral, subjective power. *Cf. In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)) (stating that to establish good cause to justify a protective order, the moving party must "make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements'").

Further, the circumstances presented here are distinguishable from the out-of-circuit caselaw Jones and Dowling provide to support that such latitude is necessary to address their "in part conclusory" jury-taint concerns. (Doc. 784 at 9); *cf. Patterson v. Burge*, No. 03 C 4433, 2007 WL 1317128, at *3 (N.D. Ill. May 4, 2007) (noting the court entered a stipulated protective order allowing a plaintiff to designate as confidential portions of his own deposition, so he could openly and safely discuss his participation in gangs); *D Stadtler Tr. 2015 Tr. v. Gorrie*, No. CV-22-00314-PHX-DWL, 2023 WL 2708575 (D. Ariz. Mar. 30, 2023) (approving a protective order which includes a provision that parties may designate as confidential information that could harm their personal safety or expose them to additional litigation); *Roe v. Puig*, No. CV2011064FMOMRWX, 2021 WL 4557229, at *2 (C.D. Cal. Aug. 13, 2021) (allowing investigative records generated by or obtained from law enforcement agencies to be designated as confidential, but only after a sufficient showing under the Ninth Circuit's relevant two-step, multi-factor test).

Accordingly, the Court finds the Special Master did not abuse his discretion in crafting a

8

"workable" modification to the protective order that sufficiently considers and accounts for Jones and Dowling's fair trial rights. (Doc. 784 at 12). Jones and Dowling's objection is **OVERRULED**.

    2.    *FirstEnergy's Objections*

Like Jones and Dowling, FirstEnergy objects to the Special Master's recommendation. But unlike Jones and Dowling, FirstEnergy argues that good cause did not support the Special Master's modified language and the Special Master abused his discretion in recommending what he did. (*See generally* Doc. 797).

The gravamen of FirstEnergy's objection is that the Special Master's recommendation would impose upon it "inconsistent legal obligations." (Doc. 797 at 8). Specifically, a deferred prosecution agreement with Department of Justice and a non-prosecution agreement with the Ohio Attorney General ("Ohio AG") require FirstEnergy to provide both entities with certain discovery obtained in this action. (*Id.*; *see also* Doc. 259-5 (deferred prosecution agreement); Doc. 725-4 (non-prosecution agreement)). And FirstEnergy is subject to a subpoena issued by the Public Utilities Commission of Ohio ("PUCO") at the request of the Ohio Consumers' Counsel that requires about the same. (Doc. 797 at 5; *see also* Doc. 644-2). Under the Special Master's recommendation, for FirstEnergy to comply with its disclosure obligations, these agencies must submit "a written agreement to the Court indicating that the agency will not disclose the Confidential Information during the pendency of this federal litigation, even in response to a public records request, and that the agency submits to the jurisdiction of the Court for purposes of enforcement." (Doc. 784 at 12).

FirstEnergy takes its disclosure obligations to these entities seriously. (Doc. 797 at 12). So seriously, in fact, that it seemingly objects on their behalf to shield them from the Special Master's recommended nondisclosure requirements. According to FirstEnergy, neither the Ohio AG nor PUCO are willing to enter into the written agreement envisioned by the Special Master. (*Id.* at 13).

9

So, FirstEnergy would be unable to make the required disclosures to either entity and would be vulnerable to sanctions for not complying with its obligations. (*Id.*). FirstEnergy's objection contends the Special Master's failure to take this into account represents an abuse of discretion. (*Id.*). At base, though, this objection is unsupported speculation.

Concerning the Ohio AG's alleged unwillingness to agree to the Special Master's recommendation, FirstEnergy repeats the State of Ohio's briefing arguments opposing certain proposed modifications because of federalism and comity concerns. (Doc. 797 at 13 (citing Doc. 720)). Tellingly, though, the State of Ohio did not object to the Special Master's ultimate recommendation or seek permission to do so. (*Cf.* Doc. 720 at 6 (noting as a limited intervenor, the State of Ohio represents the interests of the Ohio AG)). And the Special Master substantially adopted the State of Ohio's proposed language aimed at "allay[ing]" the State of Ohio's concerns about federalism and comity. (*Compare* Doc. 720 at 5 *with* Doc. 784 at 13). FirstEnergy offers no other legal support for its assertion that the Ohio AG is precluded from complying with the Court's protective order.

FirstEnergy's assertion that PUCO cannot abide by the recommended language concerning public records requests is likewise deficient. (Doc. 797 at 13; *see* Doc. 725-1 at 3–4 (FirstEnergy's counsel's declaration that in 2024, a PUCO staff member told him PUCO "is not permitted to contract around public records laws and would therefore not be able to enter into a confidentiality agreement that would restrict public dissemination of the materials PUCO receives")). FirstEnergy's argument rests on a Supreme Court of Ohio case standing for the proposition that under Ohio's public records laws, "[a] public entity cannot enter into enforceable promises of confidentiality regarding public records." S*tate ex rel. Findlay Publ'g Co. v. Hancock Cty. Bd. of Commrs.*, 684 N.E.2d 1222, 1225 (Ohio 1997); *see* Ohio Rev. Code § 149.43 (defining what is and what is not public record

10

subject to public records requests).  But that case expressly considered only a confidentiality provision in a settlement agreement.  *Id.*; *see also State ex rel. Sun Newspapers v. Westlake Bd. of Edn.*, 601 N.E.2d 173, 175 (Ohio Ct. App. 1991) (also considering a settlement agreement); *cf. State ex rel. Dispatch Printing Co. v. Wells*, 481 N.E.2d 632, 634 (Ohio 1985) (considering a collective bargaining agreement); *Teodecki v. Litchfield Twp.*, 38 N.E.3d 355, 362–63 (Ohio Ct. App. 2015) (considering a contract's confidentiality clause).  The same bar does not appear to inevitably apply to a protective order.  *See* Ohio Rev. Code § 149.43(A)(1)(v) (stating a public record does not mean a record "the release of which is prohibited by state or federal law"); *cf. State ex rel. Cincinnati Enquirer v. Sage*, 992 N.E.2d 1178 (Ohio Ct. App. 2013) ("[A] closure or sealing order may be evidence that the record is one 'the release of which is prohibited by state or federal law' pursuant to R.C. 149.43(A)(1)(v)."), *aff'd in part, rev'd in part on other grounds*, 31 N.E.3d 616 (Ohio 2015); *cf. Kentucky ex rel. Beshear v. Marathon Petroleum Co.*, LP, No. 3:15-CV-354-DJH-CHL, 2017 WL 2272082, at *3 (W.D. Ky. May 24, 2017) (saying the Commonwealth may not refuse to respond to a public records request because of the parties' private agreement, so "entry of a Protective Order is necessary to ensure that discovery materials that are legally entitled to protection from disclosure receive that protection" under an exception for information prohibited from disclosure by federal law).  Again, FirstEnergy has failed to demonstrate that PUCO is legally precluded from complying with the Special Master's recommended modifications.  For these reasons, then, FirstEnergy has failed to demonstrate that its disclosure obligations to either the Ohio AG or to PUCO require a finding that the Special Master abused his discretion.

FirstEnergy further faults the Special Master for applying the agency's disclosure prohibition to "the pendency of this federal litigation" and for not including an exception for confidential information to be used at Jones and Dowling's federal criminal trials. (Doc. 797 at 14–15).  These

objections are more puzzling. Without more substantive legal analysis, FirstEnergy simply asserts that those provisions are not justified by pretrial publicity or jury taint concerns. (*Id.*). At any rate, the Court finds the Special Master did not abuse his discretion in crafting these provisions or finding good cause supported their inclusion.

Next, FirstEnergy asserts the Special Master abused his discretion by finding good cause supported a prohibition on agency disclosure of confidential information in response to public records requests. (*Id.* at 6). FirstEnergy states the Sixth Circuit overturned a protective order that operated in much the same way. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 938 ("[T]he district court shall not enter a blanket, wholesale ban on disclosure pursuant to state public records requests."). However, in that case, the Sixth Circuit overturned a protective order that prevented otherwise public data from disclosure when the district court failed to make a finding that good cause supported the provision. *Id.* at 930–31 (finding the issue of public disclosure was "never squarely raised before the district court," so the court did not have the occasion to find that the moving party made a "particular and specific demonstration of fact" justifying the "permanent blanket ban on disclosure" (citation omitted)). The Sixth Circuit also stressed the permanent nature of the ban on disclosure in its analysis. *Id.* at 938. In contrast, the Special Master explained why good cause supported the public records provision after reviewing Jones and Dowling's extensive arguments on the matter. (Doc. 784 at 9–10 ("[P]rudence and pragmatism lean in favor of modifying the protective order before a leak or disclosures occurs that cannot be unrung and that will harm Jones and Dowling's rights to a fair trial or the State of Ohio's right to a fair state-court prosecution.")). And his recommended language does not shield confidential information from disclosure in perpetuity. (*Id.* at 12 (limited the nondisclosure period to "during the pendency of this federal litigation")). Once more, the Court is not persuaded that FirstEnergy's objection has merit.

12

Finally, FirstEnergy devotes several pages to convincing the Court that its way is better. (Doc. 797 at 15–17 (arguing for different modifications which are "substantively identical to changes [proposed] to the Special Master")). The Court remains unconvinced. And, more to the point, FirstEnergy's argument that the Special Master's recommended language raises the potential of it "having to defend motions to compel and for sanctions" in other forums does not demonstrate the Special Master abused his discretion. (*Id.*). Any speculative burden imposed on FirstEnergy by the protective order does not intrinsically outweigh the Special Master's good cause finding. At base, the Special Master operated within his discretion. FirstEnergy's objections are also **OVERRULED**.

\*\*\*

In sum, the Court finds that the Special Master's recommendation falls within the broad range of permissible conclusions available to him. *See, e.g.*, *Elfelt v. United States*, 149 F. App'x 402, 409 (6th Cir. 2005). His recommendation was not premised on a legal or factual error. *See e.g.*, *In re Ohio Execution Protocol Litig.*, 845 F.3d 231 (6th Cir. 2016). Because the Special Master did not abuse his discretion, neither Jones and Dowling's nor FirstEnergy's objections are well taken. Both are **OVERRULED**, and the Court **ADOPTS** the Special Master's recommendation in full. The parties are **ORDERED** to file an amended protective order with this language included on the docket **within the next seven (7) days**.

As a final note, Jones and Dowling also object to the Special Master's finding that they violated the Court's prior discovery order by withholding documents subject to production. (Doc. 794 at 18–31 (objecting to both the conclusion and the language the Special Master used in reaching it); *see also* Doc. 784 at 13–18). Notwithstanding their objection, the Court understands Jones and Dowling have complied with the Special Master's order to submit the documents *in camera* and *ex parte*, along with pertinent briefing. (Doc. 784 at 16 (ordering, among other things, Jones and

13

Dowling to submit "an account of their actions in regard to the withheld material" and address why sanctions are not appropriate for violating the Court's Order)). The Court also understands the Special Master intends to issue further rulings related to this matter. (*See also id.* at 17 (holding the ultimate disposition of an associated motion in abeyance)). Given this posture, Jones and Dowling's objection arguably is not ripe, and judicial economy favors considering it at a later time.

## IV. CONCLUSION

For the foregoing reasons, Defendants Jones and Dowling and Defendant FirstEnergy's objections to the Special Master's Report and Recommendation modifying the stipulated protective order are not well taken and are **OVERRULED**. (Docs. 794, 797). The Court **ADOPTS** the Special Master's recommended language in full. The parties are **ORDERED** to file a clean, signed version of the second amended protective order within seven (7) days.

IT IS SO ORDERED.

Date: July 15, 2025

_____
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE


/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE